IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DALE D. MOORE, and JEANIE NELSON, husband and wife,<br><br>Plaintiff,<br><br>vs.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, and ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>Defendants. | CV 15-71-M-DLC-JCL<br><br><br>ORDER, and FINDINGS AND RECOMMENDATIONS |

Before the Court are the following motions: (1) Plaintiffs Dale Moore and Jeanie Nelson's, and Defendant Allstate Fire and Casualty Insurance Company's ("Allstate") Fed. R. Civ. P. 56 cross motions for summary judgment with respect to the issue of whether Allstate's insurance policy provides coverage for Plaintiffs' claims; (2) Allstate's motion under Fed. R. Civ. P. 36(b) requesting leave to withdraw an admission; (3) Moore and Nelson's motion for summary judgment with respect to numerous affirmative defenses asserted by Allstate; and (4) Moore and Nelson's motion for summary judgment to dismiss Defendant The Travelers Home and Marine Insurance Company ("Travelers") Affirmative Defense No. 10 – superseding intervening cause.

1

For the reasons discussed, the Court finds as follows: (1) Allstate's motion requesting leave to withdraw its admission is granted; (2) Allstate's motions for summary judgment regarding insurance coverage should be denied; (3) Moore and Nelson's cross motions for summary judgment should be granted; and (4) Moore and Nelson's motion for summary judgment with respect to Allstate's affirmative defenses should be granted.

Finally, in a motion and brief Allstate filed on September 9, 2016, Allstate represented that Moore and Nelson recently settled their claims against Travelers. Therefore, the Court recommends Moore and Nelson's summary judgment motion against Travelers be denied as moot.

## I.     **Background**

On December 11, 2013, Moore was stopped in his vehicle at a traffic light at the intersection of South Avenue and Higgins Avenue in Missoula, Montana. At the time, Tami Gurtler ("Gurtler") was driving north on Higgins Ave. preparing to turn right onto South Ave. As Gurtler turned right, a pedestrian standing at the southeast corner of the intersection stepped into the crosswalk in front of her. When Gurtler made an evasive maneuver to avoid hitting the pedestrian she collided with Moore's vehicle. Moore sustained personal injuries and property damages as a result of the collision.

Gurtler was insured by Farmers Insurance Group which paid the full limit of its liability insurance coverage to Moore. Asserting his damages exceed the insurance proceeds he received, Moore, and his wife Nelson, seek to recover medical pay and underinsured motorist benefits from the Defendant insurance companies. The vehicle that Moore was operating at the time of the collision – a 2007 Chrysler 300 – was owned by the John Nelson Family Trust, and insured by a policy issued by Travelers. Additionally, Moore claims he is insured under a motor vehicle insurance policy issued by Allstate ("Allstate Policy"). The Allstate Policy identifies Moore's mother, Shirley Moore, as the named insured, and Dale Moore as a "listed driver."

Moore and Nelson allege Allstate and Travelers are each liable for breach of contract for failing to pay insurance benefits to Moore for his injuries and to Nelson on her claim for loss of consortium.

## II. Discussion

Moore seeks to obtain medical payment benefits, and Moore and Nelson each claim underinsured motorist benefits under the provisions of the Allstate Policy.[1] The insuring language in the Allstate Policy for each of those two

_____

[1]The parties agree that the definition of an uninsured auto in the Allstate Policy includes a motor vehicle covered by insurance but where the limits of that insurance are less than the damages the insured person is legally entitled to recover. (Doc. 42-1 at 21 of 31.) Nonetheless, the Court will refer to Moore's

3

coverages grants the benefits to an "insured person."  Specifically, the medical

payment provisions require benefits to be paid for medical expenses incurred by

an "insured person" when "bodily injury is caused by a motor vehicle accident."

(Doc. 42-1 at 18 of 31.).  Similarly, the underinsured motorist coverage provision

commits Allstate to pay damages as follows:

> [W]e will pay damages which an <u>insured person</u> is legally entitled to
> recover from the owner or operator of an uninsured auto because of bodily
> injury sustained by an insured person.

(Doc. 42-1 at 21 of 31 (emphasis added).)

Allstate's motion is, in substance, predicated upon the alternative assertions:

(1) that Moore is not an "insured person" as that term is defined in the policy; and

(2) that even if deemed an "insured person", the "non-owned auto" exclusion

precludes Moore from coverage.  Finally, Allstate argues that because Moore is

not entitled to underinsured motorist benefits Nelson's claim for underinsured

benefits predicated upon loss of consortium necessarily fails.

**A.  <u>Allstate's Admission - Motion to Withdraw</u>**

Because the preliminary insuring language employs the phrase "insured

person", Allstate's admission which it now moves to withdraw – admitting that

Moore is an "insured" – is significant.  Therefore, the Court will address that

------------------------

claim as an underinsured motorist claim.

motion as a threshold matter.

Allstate moves for leave to withdraw its admission to Plaintiffs' Fed. R. Civ.

P. 36 Request for Admission No. 8.  That request and response read as follows:

> REQUEST FOR ADMISSION NO. 8:  Please admit that Dale Moore
>
> is an insured under [Allstate's] policy number 964 753 560.

> RESPONSE:  Admit.

(Doc. 54-1 at 5 of 8.)  This admission was made by an Allstate senior claim

service adjuster on February 23, 2016.  (Doc. 54-1 at 7 of 8.)

Allstate explains it made the admission based on the definition of an

"insured person" in the Allstate Policy which includes "[Shirley Moore] and any

resident relative[.]"  (Doc. 42-1 at 18 and 22 of 31.)  The Allstate Policy identifies

a residential address for Shirley in Lolo, Montana, which is where Moore and

Nelson live.  Therefore, at the time of its admission Allstate understood that

Shirley and Moore resided in the same household.

But on March 16, 2016, Allstate learned for the first time that Shirley lives

in Reno, Nevada, and has not lived in Montana since the 1980s.  Consequently,

Allstate has taken the position that because Moore was not a resident relative of

Shirley's at the time of the incident, he was not an insured under the policy.  And

on March 28, 2016, Allstate served supplemental discovery responses in which it

denied that Moore is an insured person.  Additionally, Allstate noted that the

Chrysler 300 Moore was operating at the time of the collision was not owned by

either Shirley or Moore, thereby further disqualifying Moore as an insured person.

Allstate's motion is governed by Fed. R. Civ. P. 36(b) which provides that a

matter admitted by a party in discovery is "conclusively established unless the

court, on motion, permits the admission to be withdrawn or amended."  The court

may grant such permission "if it would promote the presentation of the merits of

the action and if the court is not persuaded that it would prejudice the requesting

party in maintaining or defending the action on the merits."  *Id*.  The Ninth Circuit

has confirmed that two requirements "must be met before an admission may be

withdrawn:  (1) presentation of the merits of the action must be subserved, and (2)

the party who obtained the admission must not be prejudiced by the withdrawal."

*Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

Leave to withdraw an admission under Rule 36(b) is permissive, not

mandatory.  Thus, the district court has discretion in deciding whether to allow the

withdrawal.  *Conlon v. United States*, 474 F.3d 616, 624-25 (9th Cir. 2007).

## 1. <u>Presentation of the Merits</u>

The first factor in assessing whether to permit a withdrawal is met if

"upholding the admission would practically eliminate any presentation of the

merits of the case." *Hadley*, 45 F.3d at 1348.

Because the Allstate Policy affords medical payment and underinsured motorist coverage to an "insured person," the Court concludes Allstate's admission that Moore is an "insured" would conclusively establishes that coverage exists for his claims under the Allstate Policy. Therefore, the admission would eliminate consideration of the merits of the coverage issues argued by the parties, and a withdrawal of the admission would be warranted.

## 2.    **Prejudice to Moore**

The prejudice prong of the test is not satisfied simply because the withdrawal would require the opposing party to prove the matter that was previously admitted. *Hadley*, 45 F.3d at 1348. Instead, the prejudice analysis considers the difficulty that a party may face in proving a matter after the withdrawal, due to circumstances such as the unavailability of key witnesses, or the "sudden need to obtain evidence" with respect to matters previously answered by the admission. *Id*. *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) (defining prejudice as the difficulty a party would face in proving its case).

Moore argues that a withdrawal of Allstate's admission would create a sudden need to obtain evidence with respect to matters previously answered by the admission. Specifically, he asserts that in the absence of Allstate's admission he

would have pursued additional legal claims against Allstate and its former agent who sold the policy, Jim Sampson:  i.e. negligent procurement of insurance and negligent misrepresentations as to Moore's coverage as an insured under the Allstate Policy.  Moore suggests Allstate's admission eliminated his need to advance these additional legal claims, and he would be prejudiced if the admission is withdrawn.  But the Court finds Moore's arguments unpersuasive.

Moore asserts that prior to the subject incident his understanding and expectation was that as a listed driver he was an insured under the policy entitled to coverage.  Furthermore, he asserts his understanding and expectation is based, in part, upon instructions he gave Jim Sampson for procuring coverage, and Sampson's representations that Moore was covered under the policy.  But once Allstate declined to pay his claims, he was aware Allstate was not providing the coverage that Sampson represented Moore had obtained.  Consequently, nothing prevented Moore from prosecuting his claims for negligent procurement and negligent misrepresentation from the outset.  Allstate did not make its admission regarding Moore's status as an insured until February, 2016, after the November 20, 2015 deadline in this case for the amendment of pleadings.  Allstate's admission did not preclude Moore from asserting his additional legal claims earlier.  Because Moore has failed to identify the requisite prejudice he would

suffer if Allstate's admission were withdrawn, Allstate's motion is granted. But the fact the admission is properly withdrawn does not end the Court's inquiry.

**B.    Medical Payment and Underinsured Motorist Coverages Under the Allstate Policy**

Allstate and Moore's cross motions for summary judgment each address the issue of whether the Allstate Policy covers Moore's claims for underinsured motorist and medical payment benefits. For the reasons discussed, the Court finds the Allstate Policy's definition of an "insured person" and Moore's status as a "listed driver" in the declarations pages of the Allstate Policy give rise to an ambiguity which the Court must resolve in favor of finding coverage for Moore under the policy.

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving

9

party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

Under Montana law, the proper construction and interpretation of an insurance contract is a question of law for the court to resolve.[2] *Modroo v. Nationwide Mutual Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). A court must examine insurance contracts as a whole, and do not give special deference to specific clauses in the contract. *Id*. And the court must "reconcile [the contract's] various parts to give each meaning and effect." *Farmers Alliance Mutual Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998). The courts must interpret insurance policy provisions, terms, and words "according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1046 (Mont. 2008) (quotation and citation omitted). If the language of the policy is clear and explicit the court "must enforce it as written", and may not rewrite the contract. *Id*.

If a clear, common sense interpretation of a policy is not possible due to an

---

[2]Because jurisdiction over this action is founded upon diversity of citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). Also, the parties agree that the Allstate Policy declares that the law of Montana governs its interpretation.

ambiguity, then the ambiguity "must be construed in favor of the insured, and in favor of extending coverage." *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003). "An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations." *Id*. Whether an ambiguity exists is "determined through the eyes of a consumer with average intelligence but not trained in the law or insurance business." *Id*. (citation and quotation omitted). "[A] mere disagreement over the meaning of an insurance provision[, however,] does not render the provision ambiguous." *Heggem v. Capitol Indemnity Corp.*, 154 P.3d 1189, 1195 (Mont. 2007). The court will not create an ambiguity where no ambiguity exists. *Stutzman v. Safeco Insurance Co. of America*, 945 P.2d 32, 36 (Mont. 1997). Absent an ambiguity, the language of an insurance policy, by itself, governs its interpretation. *Miller v. Title Ins. Co. of Minnesota*, 987 P.2d 1151, 1154 (Mont. 1999).

### 1. <u>Listed Driver</u>

Moore argues he qualifies as an "insured person" under the Allstate Policy because he is identified as a "listed driver" in the policy's declarations pages. (Doc. 42-1 at 5 of 31.) Although the Allstate Policy does not define the significance of a "listed driver", Moore suggests that a reasonable interpretation of that phrase is to include it within the definition of an "insured person" as used in

the policy. He suggests the "listed driver" designation gives rise to an ambiguity, and gives rise to his reasonable expectation that he is covered as an insured. The Court agrees.

The Montana Supreme Court has not expressly addressed the issue of the significance of individuals identified only as "listed drivers" in an automobile liability insurance policy as it pertains to underinsured motorist coverage. Courts in other jurisdictions which have addressed the issue have reached differing conclusions. Generally these divergent views turn on the degree of legal significance given to the intentions of the parties and the claimants' reasonable expectations of coverage in the face of unambiguous policy language.

Courts in the majority view give controlling deference to the unambiguous language of the policy under scrutiny if the policy expressly defines those individuals entitled to underinsured motorist benefits. Hardly a remarkable conclusion. For example, in *Kitmirides v. Middlesex Mutual Assurance Co.*, 783 A.2d 1079 (Conn. App. 2001), affirmed 260 Conn. 336 (2002), the plaintiff sought to obtain underinsured motorist coverage under the subject automobile insurance policy which afforded underinsured motorist coverage to a "covered person." The policy defined a "covered person" to include "you", and it defined "you" as the "named insured" on the declarations page. 783 A.2d at 1082. The only person

unambiguously identified as the "named insured" on the declarations page was the plaintiff's father-in-law. *Id*. at 1083. The plaintiff was, instead, identified only in the list of drivers set forth under the heading "DRIVER INFORMATION" on the declarations page. *Id*. at 1081. The policy did not define the significance of those identified in the list of drivers, and it did not assign any coverage rights under the insurance policy to those listed drivers. The plaintiff argued that her undefined status as a listed driver on the declarations page created an ambiguity which had to be construed in her favor by including her as a "named insured" and a "covered person" for purposes of obtaining underinsured motorist coverage under the policy.

The *Kitmirides* court, however, did not agree an ambiguity existed as suggested by the plaintiff. Instead, the court found the insuring language in the underinsured motorist coverage unambiguously narrowed the definition of a "covered person" to a specific individual identified as the "named insured" on the declarations page. Therefore, even though the policy did not define, or assign rights to, the listed drivers, the court concluded the list of drivers did not render ambiguous the otherwise unambiguous language of the underinsured motorist coverage provisions. *Kitmirides*, 783 A.2d at 1084.

Consistent with the analysis in *Kitmirides*, courts in other jurisdictions have

similarly found that where the insuring language of underinsured motorist coverage provisions unambiguously identifies those who are afforded that coverage, a person's undefined status as a listed driver on the declarations page does not thereby render the clear insuring language ambiguous. *See Wetzel v. Auto-Owners Ins. Co.*, ___ N.E.3d ___, 2016 WL 4262814 (Ohio App. 2nd Dist. 2016); *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41 (Minn. 2008); *Ex Parte: United Services Auto. Assoc.*, 614 S.E.2d 652 (S.C. App. 2006); *Puryear v. Progressive Norther Ins. Co.*, 790 N.E.2d 138 (Ind. App. 2003); and *Georgia Farm Bureau Mutual Ins. Co. v. Wilkerson*, 549 S.E.2d 740 (Ga. App. 2001).

As noted, a minority view has developed where some courts have concluded that the identification of individuals as listed drivers on an automobile policy, by itself, warrants the extension of underinsured motorist coverage to those drivers notwithstanding the clear and unambiguous language of the policy which does not include the listed drivers within the coverage provisions. Based upon a claimant's undefined status as a listed driver, these courts place controlling emphasis upon the reasonable expectations of the claimant and the intentions of the parties over the unambiguous language of the policy. *See Lehrhoff v. Aetna Casualty and Surety Company*, 638 A.2d 889 (N.J. Super. 1994), and *Mallane v. Holyoke Mutual Ins. Co. in Salem*, 658 A.2d 18 (R.I. 1995). Alternatively, other

jurisdictions in the minority view conclude that the undefined status of listed drivers gives rise to an ambiguity which must be construed to include the drivers within the otherwise unambiguous underinsured motorist coverage provisions of the policy. *See Christenberry v. Tipton*, 160 S.W.3d 487 (Tenn. 2005); *Jensen v. State Auto. Mut. Ins. Co.*, 2005 WL 2008691 (Ohio App. 10th Dist. 2005); and *Roelle v. Coffman*, 1997 WL 722775 (Ohio App. 3rd Dist. 1997).

The specific circumstances in this case and the language of the Allstate Policy do not neatly fit within either the so called majority or minority views. Rather, construing the language of both the medical payment and underinsured motorist coverage provisions of the Allstate Policy in accordance with controlling Montana decisional law, the Court is compelled to conclude that the policy gives rise to an ambiguity regarding the term "listed driver" that must be construed in favor of coverage.

As discussed, the Allstate Policy affords medical payment and underinsured motorist coverage to an "insured person." And for each of those coverages the Allstate Policy further defines an "insured person" to include "you". (Doc. 42-1 at 18 and 22 of 31.) The policy defines "you" as "the policyholder named on the Policy Declarations[.]" (Doc. 42-1 at 12 of 31.) But the term "policyholder" is

not defined in the declarations pages or anywhere in the text of the policy.[3]  (Doc. 42-1 at 4-7 of 31.)  Instead, the declarations pages identify only a "named insured" (Shirley Moore) (doc. 42-1 at 4 of 31), and "listed drivers[.]"  (Doc. 42-1 at 5 of 31.)  The listed drivers, in turn, are identified as Shirley Moore, Danni Moore, Dale Moore and Devon Moore.  (*Id*.)

Because the Allstate Policy does not define or identify the "policyholder" on the face of the declarations pages, the definitions of "you" and "policyholder" are subject to differing reasonable interpretations.  A reasonable person attempting to identify the "policyholder" on the declarations page would find only the "named insured" and "listed drivers", not a "policyholder."  Therefore, a reasonable interpretation of the policy, through the eyes of a consumer with average intelligence but not trained in the law or insurance business, is that "policyholder" includes the "named insured," the "listed drivers", or both, as named in the policy declarations.  *See Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 50 (Minn. 2008) (Anderson, Page & Meyer, JJ., dissenting).[4]  And under Montana law this

---

[3]The issue presented is distinct from that addressed in *Kitmirides*, supra, where "you" was defined as the "named insured" on the declarations page.

[4]Sitting in diversity jurisdiction and addressing an issue of state law which the state's highest court has not adjudicated, "a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."  *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted).  In doing so, the court must "look to existing state law without

ambiguity must be construed in favor of the insured, and in favor of extending

coverage by construing a listed driver as a policyholder.[5]

Furthermore, as a matter of law, the lack of clarity in the Allstate Policy's

reference to the "policyholder" subjects the construction of the policy to the

reasonable expectations doctrine. The "doctrine provides that the objectively

reasonable expectations of insurance purchasers regarding the terms of their

policies should be honored notwithstanding the fact that a painstaking study of the

policy would have negated those expectations." *American Family Mutual Ins. Co.*

*v. Livengood*, 970 P.2d 1054, 1059 (1998). The reasonable expectations doctrine

is applicable where the policy does not "clearly demonstrate an intent to exclude

coverage." *Meadowbrook, LLP v. First American Title Ins. Co.*, 329 P.3d 608,

---

predicting potential changes in that law." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted). The court should also rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996). In this respect, the Court acknowledges the holding by the majority in *Carlson*, supra, that the precise language at issue here is not ambiguous. But this Court does not find the majority's analysis persuasive. Instead, this Court is confident the Montana Supreme Court would reach the opposite conclusion.

[5]A further ambiguity exists with respect to the terms "policyholder", "named insured" and "listed drivers." Shirley Moore, identified as the "named insured", is additionally identified as a "listed driver." Her designation under both categories adds further confusion as to the significance of the difference, if any, between "named insured" and "listed drivers", further making it reasonable to interpret the "policyholder" to include both the "named insured" and the "listed drivers."

611 (Mont. 2014). As discussed, the Allstate Policy does not clearly demonstrate an intent to exclude "listed drivers" from those included as "policyholders."

Given the imprecise content of Allstate's declarations pages and the language of the Allstate Policy, a reasonable person would expect that a listed driver would be an insured person under the terms of the policy. A "typical automobile policyholder would understand and expect from the declarations page of this policy that each of the listed drivers was entitled to all of the coverages and all of the protections afforded by the policy." *Lehrhoff v. Aetna Casualty and Surety Company*, 638 A.2d 889, 893 (N.J. Super. 1994).

Based on the foregoing ambiguity in the Allstate Policy, and the application of the reasonable expectations doctrine, the Court concludes the Allstate Policy must be construed in favor of finding coverage for Moore. Moore's status as a listed driver must be construed as included within the definitions of a "policyholder", "you", and an "insured person" for purposes of both the medical payment and underinsured coverage provisions of the Allstate Policy.

## 2. <u>Non-Owned Auto Exclusion</u>

Allstate contends that even if the Court finds Moore is covered as an insured person by virtue of his status as a listed driver, there exists an exclusion within the underinsured motorist provisions which it argues is applicable to

Moore's claim.  The Allstate Policy's underinsured motorist provisions contain exclusionary language limiting certain circumstances when a person might otherwise qualify as an "insured person."  Those circumstances exist when a person is operating a non-owned auto that was available for the person's "regular use."  (Doc. 42-1 at 22 of 31.)  Moore does not dispute that neither he nor Shirley owned the Chrysler 300 he was driving at the time of the collision, and he does not dispute the vehicle was available to him for his regular use.  Therefore, Allstate argues the referenced non-owned auto exclusion bars his claim for coverage.  The Court disagrees.

The language of the Allstate Policy's underinsured motorist provisions identifies alternative ways in which a person may qualify as an "insured person" who is eligible to receive those benefits.  As discussed, one way to qualify is if the person is "you [or] any resident relative."  (Doc. 42-1 at 22 of 31.)  Alternatively, a person may qualify as an "insured person" by virtue of his or her operation of an "insured auto."  (*Id*.)  The definition of an "insured auto", however, in turn incorporates the referenced regularly-used non-owned auto exclusion on which Allstate relies.  (*Id*.)

But based upon a clear reading of the language of the Allstate Policy, the non-owned auto exclusion is invoked only if the person seeking coverage is

attempting to qualify as an "insured person" by virtue of his or her operation of an "insured auto." The exclusion clearly is not triggered when the person qualifies as an "insured person" because the person is "you [or] any resident relative."

Here, as discussed, Moore's status as a listed driver must be construed as included within the definitions of "you" and the "policyholder", thereby rendering him an "insured person" without regard to whether he was operating a vehicle that qualifies as an "insured auto." This definition of an "insured person" is clearly not subject to the non-owned auto exclusion that is contained only within the alternative definition of an "insured person" which depends upon the operation of an "insured auto."

Based on the foregoing, the Court should construe the language of the Allstate Policy to include Moore as an insured person due to the ambiguity identified and his status as a listed driver. The non-owned auto exclusion is inapplicable to this finding of coverage. Therefore, Allstate's summary judgment motion should be denied, and Moore's motion should be granted.

**C.**     **Loss of Consortium Coverage Under the Allstate Policy**

Allstate and Nelson filed cross motions for summary judgment with respect to the issue of whether Nelson's claim for loss of consortium is covered under the underinsured motorist coverage provisions. Nelson's claim is predicated upon the

bodily injury Moore sustained in the subject collision, and the parties agree the legal ground for her claim is derivative of Allstate's liability and obligation to provide underinsured motorist coverage to Moore. *Mickelson v. Montana Rail Link*, 999 P.2d 985, 1003 (Mont. 2000). They agree Nelson's recovery of insurance benefits from Allstate is wholly dependent upon the issue of whether Moore is entitled to underinsured motorist benefits under the Allstate policy. Because the Court concludes Moore is covered under the policy, Nelson's loss of consortium claim is also covered under the policy. The underinsured motorist coverage is extended to "any other person who is legally entitled to recover because of bodily injury to" Moore. (Doc. 42-1 at 22 of 31.) Therefore, Allstate's motion should be denied, and Nelson's motion should be granted.

### D.    <u>Affirmative Defenses - Superseding, Intervening Cause</u>

Moore and Nelson move for summary judgment dismissing certain affirmative defenses asserted by Allstate. First, they seek dismissal of Allstate's Fifth Affirmative Defense set forth in its Answer. In that defense Allstate contends Moore and Nelson's injuries and damages sustained in the subject collision "were proximately caused by an unforeseeable, independent, intervening and/or superseding event or cause beyond the control of and unrelated to the conduct of Allstate." (Doc. 20 at 5.) Allstate's defense is based upon the

pedestrian who stepped into the street in front of Gurtler when she was making her right turn on to South Ave.

Under Montana law, a superseding intervening cause is "an unforeseeable event that occurs after the defendant's original act of negligence [which] will generally serve to cut off defendant's liability." *Faulconbridge v. State of Montana*, 142 P.3d 777, 792 (Mont. 2006). Thus, actions or events that are foreseeable do not break the chain of causation triggered by defendant's conduct. *Id*. at 793. And "when reasonable minds could reach but one conclusion, the question of foreseeability may be determined as a matter of law." *Faulconbridge*, 142 P.3d at 792 (quoting *Cusenbary v. Mortensen*, 987 P.2d 351, 358 (Mont. 1999)).

At the time of the subject collision, Gurtler was driving north on Higgins Ave. intending to turn right onto South Ave. A pedestrian was at the southeast corner of the intersection, and Gurtler saw the pedestrian. Gurtler had a green right-turn arrow as she made her turn onto South Avenue, and the pedestrian crosswalk light at the northeast corner of the intersection facing south displayed the do-not-walk signal. While making her turn Gurtler looked left, and then looked back to the right to find the pedestrian had stepped out onto the street in the crosswalk to cross South Avenue to the north. Gurtler made an evasive

maneuver to avoid hitting the pedestrian, and she collided with Moore's vehicle sitting at the intersection. As it turns out, the pedestrian was visually impaired, was not walking with a cane, and was unable to distinguish the pedestrian do-not-walk signal at the intersection.

Allstate argues the circumstances of the visually impaired pedestrian stepping into the street in the crosswalk, against the do-not-walk signal when Gurtler had a green right-turn arrow, could serve as a superseding intervening act which broke the chain of causation triggered by Gurtler's own alleged negligence. For the reasons stated, however, the Court disagrees.

The standard of reasonable conduct applicable in a claim of negligence requires that a defendant must "protect the plaintiff against that occasional negligence which is one of the ordinary incidents of human life, and therefore to be anticipated." *Sizemore v. Montana Power Co.*, 803 P.2d 629, 636 (Mont. 1990). Thus, a "defendant's liability for his wrongful act will not be severed by an intervening cause if the intervening cause is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." *Larchick v. Diocese of Great Falls-Billings*, 208 P.3d 836, 850 (Mont. 2009) (citation and quotation omitted).

Although Montana law recognizes a motorist may have to involuntarily

swerve to avoid a hazzard, Montana negligence law nonetheless subjects the motorist to liability when the "involuntary swerve" "is the direct result of hazards that every motorist must anticipate." *Craig v. Schell*, 975 P.2d 820, 825 (Mont. 1999). Thus, Montana law requires that motorists must anticipate certain situations, such as deer or small animals running across a highway, swirling snow, black ice, a chuckhole in the road, and the sudden appearance of obstacles or certain emergencies. *Id*. at 826. A motorist cannot avoid liability by arguing he or she instinctively or involuntarily reacted to sudden circumstances when those circumstances are ones that "should be anticipated" by motorists. *Id*. Motorists "constantly face [foreseeable] hazards and must be prepared to deal with them safely and not jeopardize other motorists[.]" *Id*.

Here the Court finds that the circumstances surrounding the pedestrian stepping into the street in front of Gurtler do not constitute an unforeseeable hazard. Despite the do-not-walk pedestrian signal and the green right-turn arrow for Gurtler, it is foreseeable that a pedestrian may still choose to walk across a street at an intersection in those circumstances. The presence of a pedestrian – visually impaired or not – in a crosswalk under those circumstances is the equivalence of the sudden appearance of an obstacle in a situation which every motorist must anticipate could occur. The Court concludes reasonable minds

could reach but one conclusion – that a jaywalking pedestrian is foreseeable in the circumstances of this case. Therefore, Allstate's affirmative defense asserting that the pedestrian was a superseding intervening cause of the collision cannot be maintained. Moore and Nelson's summary judgment motion against Allstate dismissing the defense should be granted.

Moore and Nelson further move for summary judgment dismissing Allstate's Sixth and Seventh Affirmative Defenses asserted in its Answer. Those defenses assert as follows:

**SIXTH AFFIRMATIVE DEFENSE**

The Plaintiffs did not suffer any actual damages as a result of any conduct of an uninsured motorist, an underinsured motorist or Allstate.

**SEVENTH AFFIRMATIVE DEFENSE**

If it is determined that Plaintiffs have suffered any damages, such damages or injuries, if any, were caused by or contributed to the wrongful acts and/or negligence of other individuals or entities whose conduct is unrelated to Allstate.

(Doc. 20 at 5-6.) Moore and Nelson argue these defenses are precluded as a matter of law because Allstate is not permitted to apportion liability to a third party who is not a party to this action. Specifically, they argue that to the extent Allstate seeks to attribute some of the cause of their damages to the pedestrian involved in the incident, Montana law prohibits Allstate from asserting that matter

as a defense.

In response to Moore and Nelson's motion Allstate asserts its defenses at issue in the motion are necessary and relevant only to the issue of whether the pedestrian's conduct was a superseding and intervening cause of Plaintiffs' injuries. Allstate does not argue that it seeks to proportionally attribute some causation to the pedestrian's conduct.

Montana law prohibits a defendant from presenting evidence for the "comparison of fault with [...] any other person who could have been, but was not, named as a third party." Mont. Code Ann. §27-1-703(6)(c)(iii). Consequently, although conduct of a non-party may be admissible for the purpose of establishing a superseding and intervening cause of a plaintiff's damages, "[a] defendant may not, however, introduce such non-party conduct in an attempt to merely diminish its own responsibility, for this would constitute an [impermissible] attempt to apportion fault to a non-party[.]" *Faulconbridge v. State of Montana*, 142 P.3d 777, 792 (Mont. 2006).

Here the parties have identified the pedestrian by name, but neither party named the pedestrian as a defendant, nor joined the pedestrian as a third party. Because the pedestrian is not a party in this litigation, Allstate is prohibited from apportioning fault to the pedestrian to diminish the extent of its own liability for

underinsured motorist coverage.  Therefore, Moore and Nelson's summary judgment motion should be granted in this respect.

## III.    Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that Allstate's motion to withdraw its admission is GRANTED.

IT IS FURTHER RECOMMENDED that Allstate's summary judgment motions as to coverage under the Allstate Policy for Moore's underinsured motorist and medical payment benefits claims, and for Nelson's loss of consortium claim be DENIED, and that Moore and Nelson's summary judgment motions as to coverage for their claims under the Allstate Policy be GRANTED.

Finally, IT IS RECOMMENDED that Moore and Nelson's summary judgment motion to dismiss Allstate's affirmative defenses be GRANTED, and their summary judgment motion to dismiss Travelers' intervening superseding cause defense be DENIED as moot on the basis Plaintiffs have settled their claims against Travelers.

The parties are advised that pursuant to 28 U.S.C. § 636(b)(1), any objections to these findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel on or before September 22, 2016, and any response to a party's objections filed under Fed. R. Civ. P. 72(b)(2) shall

be filed on or before September 29, 2016. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

DATED this 15th day of September, 2016.

Jeremiah C. Lynch
United States Magistrate Judge