IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DALE D. MOORE, and JEANIE NELSON, husband and wife,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CV 15-71-M-DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

I.  **Introduction**

Plaintiff Dale Moore ("Moore") was injured in a vehicular collision that occurred on December 11, 2013, in Missoula, Montana. The insurer of the at-fault driver paid Moore the limits of the applicable liability insurance policy. Moore subsequently filed this suit seeking benefits under two insurance policies that provided him underinsured motorist coverage. The parties are in agreement the first of those policies issued by Defendant Travelers Home and Marine Insurance Company ("Travelers") – with an applicable per person limit of $300,000 – provides "primary" underinsurance coverage. And that the second of those policies issued by Allstate Fire and Casualty Insurance Company – with an applicable per person limit of $100,000 – provides "excess" underinsurance

1

coverage.[1]

Moore has now settled his claim as against the "primary" insurer Travelers. But the settlement was for an amount less than the $300,000 per person limit. In the wake of Moore's settlement with Travelers, "excess" carrier Allstate has moved for summary judgment upon Moore's claim for underinsured motorist benefits as against it. Allstate argues that because Moore did not entirely exhaust the $300,000 per person limit of the Travelers policy, he is precluded by the "other insurance" provision of the Allstate policy from seeking underinsurance benefits under that policy.

Contrary to Allstate's assertion, under Montana decisional law, Moore need not entirely exhaust the $300,000 per person limit of the Travelers "primary" coverage before availing himself of the underinsured motorist benefits available under the Allstate policy – so long as Allstate receives credit for the full amount of Travelers' $300,000 per person limit in offset to Moore's damages that exceed the $100,000 paid by the tortfeasor's liability insurer. Therefore, for the reasons explained more fully below, Allstate's motion for summary judgment should be denied.

II.     Discussion

---

[1] Moore's wife, Jeanie Nelson, also seeks underinsurance motorist benefits in her own right under the referenced policies.

The underinsured motorist endorsement to the Allstate policy contains a so-called "other insurance" clause that provides:

> **If There is Other Insurance:** If the insured person was in, on, getting into or out of, or getting on or off of, a vehicle which is insured for [underinsured] coverage under another policy, this coverage will be excess.

The "other insurance" clause operates to render Allstate the excess insurer as between Allstate and Travelers. It is true, as argued by Allstate, that as a general proposition, excess insurance clauses like the one at issue here are valid under Montana law and generally can be enforced as between two insurers, as well as between the excess insurer and its insured. See, *Bill Atkinson Volkswagen, Inc. v. McClafferty*, 689 P.2d 1237, 1241 (Mont. 1984); *Scheafer v. Safeco Ins. Co.*, 320 P.3d 967, 972 (Mont. 2014).

Moore does not dispute these general propositions, but takes the position that in light of the rationale espoused by the Montana Supreme Court in *Augustine v. Simonson*, 940 P.2d 116 (Mont. 2007), an insured in Moore's position need not entirely exhaust primary underinsurance motorist coverage before tapping into available excess underinsured coverage. But as the Court recognized in *Augustine*, the excess insurer is entitled to claim an offset to the insured's damages in an amount equal to the applicable limit of the primary policy.

The issue presented in *Augustine* was whether a standard exhaustion clause

3

contained in an underinsured motorist endorsement could be enforced against the insured, thereby requiring the insured to entirely exhaust applicable bodily injury liability limits. Persuaded by the reasoning of numerous other court that have held such exhaustion clauses to be unenforceable, the Court held "the provision requiring the tortfeasor's liability insurance be entirely exhausted as a prerequisite to securing indemnification from the underinsured motorist coverage is contrary to the public policy of the State of Montana" and is unenforceable. *Augustine*, 940 P.2d at 120. The Court further elaborated that a claim must first be made with the tortfeasor's liability carrier, and underinsurance coverage becomes available "only when the insured's damages exceed the stated limit of the tortfeasor's liability insurance." *Augustine*, 940 P.2d at 121. Thus, "the [underinsurance carrier] shall receive credit...for the full amount of the tortfeasor's policy limit." *Augustine*, 940 P.2d at 121. The Court reasoned that even if the insured settles with the tortfeasor's insurance for less than the applicable liability limit, the underinsurance carrier is not prejudiced because it receives a credit for the full liability policy limit. *Augustine*, 940 P.2d at 121.

In this Court's view, there is no principled way to distinguish the exhaustion issue presented in *Augustine* from the exhaustion issue presented in this case. The same public policy concerns underlying the holding in *Augustine* are in play here.

There is no consensus among the courts as to whether or not an excess clause, to the extent it would require exhaustion of the primary coverage, is enforceable. See e.g., *Repasy v. Nationwide Ins. Co.*, 425 N.E.2d 959, 960-61 (Ohio App.2d 1980) (not enforceable); *Mississippi Farm Bureau Mutual Ins. Co. v. Garrett*, 487 So.2d 1320, 1323-24 (Miss. 1986) (not enforceable). See also *Miller v. Safety Mut. Cas. Corp.*, 497 So.2d 1273, 1274 (Fla. Ct. App. 1986); *Schweighart v. Country Mutual Ins. Co.*, 460 N.E.2d 89, 90 (Ill. App. 1984); contra *State Farm Mut. Ins. Co. v. United Services Auto Ass'n*, 176 S.E.2d 327, 331 (Va. 1970). And the Montana Supreme Court has not directly addressed the issue in the precise situation presented here – primary and excess underinsurance coverage. This Court is convinced, however, that the Montana Supreme Court would follow the better reasoned approach and hold that the effect of an insured's decision to settle below the primary underinsurance carrier's limit does not discharge the excess underinsurance carrier's total liability.[2]  Rather, as in *Augustine*, the

---

[2] When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court sitting in diversity jurisdiction must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted). The court should also rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern, California Permanente Medical Group*, 79

Montana Supreme Court would conclude that the effect of the excess clause is to simply permit a deduction of the primary carrier's limits from the insured's damages, leaving the insured with access to the excess carrier's limits.

Allstate takes issue with the suggestion that the Montana Supreme Court has not addressed the issue a hand, citing *Scheafer v. Safeco Ins. Co.*, 320 P.3d 967 (Mont. 2014). But Allstate reads *Scheafer* far too broadly. Scheafer made a claim upon her underinsurance carrier, Safeco Ins. Co., for benefits. Relying upon the "other insurance" clause of its underinsured motorist endorsement, Safeco advised Scheafer it would not pay any underinsurance benefits until the primary insurer Mountain West Farm Bureau's limit was exhausted. *Scheafer*, 320 P.3d at 968. Scheafer filed suit against Safeco, but importantly her "complaint did not indicate whether Mountain West, or any other insurer, had paid benefits to Scheafer and, if so, the amount and nature of such benefits." *Scheafer*, 320 P.3d at 969. The Montana Supreme Court framed the issue presented on appeal "as whether the 'other insurance' clauses in Scheafer's policy are valid, and whether they violate the made whole doctrine as *de facto* subrogation." *Scheafer*, 320 P.3d at 970.

With the issue so farmed, the Court's discussion focused principally on whether the case was a subrogation/made whole case, which the Court concluded

---

F.3d 859, 865 (9th Cir. 1996).

it was not. Rather, the Court characterized the case as one involving the validity of the "other insurance" clauses. In the end, the Court merely held that the "other insurance" clauses in Scheafer's policies were valid, and as applied to the circumstances of the case did not constitute *de facto* subrogation.

Pertinent to the present discussion is the Montana Supreme Court's cautionary statement:

> Significantly Scheafer does not argue that her damages and losses exceed the benefits that were available under the Mountain West policy.... In fact, she asserts that she 'is not alleging her losses exceeded the limits' of the UIM coverage in Mountain West's policy.
>
> *Scheafer*, 320 P.3d at 973.

Contrary to Allstate's suggestion, when read in its entirety the *Scheafer* decision hardly stands for the proposition that the Montana Supreme Court was rejecting application of the *Augustine* rationale in the context of an "other insurance" clause contained in an underinsured motorist endorsement.

Therefore, IT IS RECOMMENDED that Defendant Allstate's motion for summary judgment be DENIED.

DATED this 12th day of December, 2016.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge